1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE BERARDI,<br><br>                              Petitioner,<br><br>         vs.<br><br><br>DANIEL PARAMO, Warden,<br><br>                              Respondent. | Civil No. 13cv1598-BTM (BLM)<br><br>**ORDER:**<br><br>**(1)  ADOPTING THE FINDINGS AND CONCLUSIONS OF UNITED STATES MAGISTRATE JUDGE;**<br><br>**(2)  DENYING PETITION FOR A WRIT OF HABEAS CORPUS; and**<br><br>**(3)  ISSUING A CERTIFICATE OF APPEALABILITY LIMITED TO CLAIM 1 OF THE PETITION** |

George Berardi ("Petitioner"), is a California prisoner proceeding by and through counsel with a First Amended Petition ("Petition") for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (ECF No. 6.) Petitioner and his co-defendant, both White males, were convicted of murdering, and conspiracy to murder, an African-American male. Petitioner alleges here, as he did in state court, that his federal Constitutional rights were violated because Juror No. 9, the only African-American on the jury, was racially biased, as evidenced from the post-verdict testimony of six of the twelve jurors that Juror No. 9 made a statement near the end of lengthy deliberations to the effect that the deliberations would not have taken so long if a White man had been shot by a Black man (Claim 1), and ineffective assistance of counsel based on allegations

that defense counsel prevented Petitioner from testifying at trial (Claim 2).  (ECF No. 6 at 4-5, 9-33.)

United States Magistrate Judge Barbara L. Major has filed a Report and Recommendation ("R&R") which recommends habeas relief be denied because Claim 2 is untimely, and because the adjudication of both claims by the state court is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  (ECF No. 30.)  Petitioner has filed Objections to the R&R.  (ECF No. 33.)

The Court has reviewed the R&R and the Objections thereto pursuant to 28 U.S.C. § 636(b)(1), which provides that: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

**1.     Claim 1**

Petitioner alleges in Claim 1 that Juror No. 9 was racially biased.  (ECF No. 6 at 9-22.) Six days after the verdicts were returned, the trial judge received a letter from Juror No. 5, which, as summarized in Petitioner's new trial motion, stated:

> At the beginning of deliberations on January 22, 2009, the same day the verdict was finally reached after several days of deliberation, there were still three hold-outs for a murder conviction, and conspiracy had not even been discussed yet.  At some point there was only one hold-out for murder.  Then, one of the jurors, the only African-American juror, "launched into a heated racist tirade, directed at all of us, accusing us of 'doing what you're gonna do' and saying 'you know god damn good and well if this was a white boy shot by a black man there wouldn't even be a trial.'  He had risen from his seat and was gesturing wildly." After he caught his breath he continued his accusations of racism.  He dared the other jurors to try to have him removed from the jury and stated that he did not want to be there.  After the tirade the remaining hold-out for murder was no longer a hold-out, and apparently conspiracy was quickly deliberated on and a unanimous decision reached.  Also, the juror who engaged in the racial tirade against all the other jurors spent most of his time in deliberations with his back turned to the rest of the jurors, "occasionally loudly snorting or scoffing, sometimes turning to us and making simplistic and defiant statements like 'he had a gun, they did a deal, a man got shot!' then turning his back on us again."  The final hold-out sobbed before raising her hand for a unanimous decision of guilt.  Juror #5 regrets that no one had the courage to call the bailiff regarding what was happening in the jury deliberation room.

(Lodgment No. 3, Clerk's Tr. ["CT"] at 1322.05.)

After the trial judge forwarded the letter to the attorneys, the judge received messages from two jurors indicating that they had been contacted by a defense investigator and asking for advice on how to proceed.  (Lodgment No. 4, Reporter's Tr. ["RT"] at 1935-36.)  On February 20, 2009, the trial judge ordered the attorneys to refrain from further contact with the jurors, and sent a form letter to all 12 seated jurors advising them that the parties wished to speak to them about their deliberations and inviting them to contact the court.  (RT 1936.)  Juror Nos. 1, 2, 3, 5, 11, and 12 agreed to testify, and on April 3 and 10, 2009, the trial judge asked them questions from a modified list submitted by the attorneys (CT 699-700, 1310.06-.08, 2057-62), including whether any juror had refused to deliberate or attempted to intimidate other jurors; whether the juror ever felt pressured, intimidated or had their ability to deliberate affected; whether the race of the victim was ever brought up during deliberations; and how quickly they reached a verdict after Juror No. 9's outburst and if it persuaded or influenced the hold-out jurors.  (RT 1960-2018.)  Their testimony is summarized in the R&R, and is generally consistent with Juror No. 5's letter, but also includes testimony that when a juror responded, "how dare you call me a racist," Juror No. 9 replied, "if the shoe fits, wear it."  (R&R at 13-14.)  On May 21, 2009, the trial judge denied a motion for a new trial alleging juror bias and misconduct.  The trial judge applied a three-part inquiry which all parties agreed was appropriate (RT 1952), which asked whether the evidence submitted is admissible, and, if so, whether it establishes misconduct, and, if so, whether the misconduct was prejudicial, and the trial judge ruled:

> The first step is whether or not the court can consider or make a determination as to what evidence it can consider in the matter and hold an evidentiary hearing where we can make a determination as to what took place.

> I think, in reviewing of many of the statements of the jurors, we have really a mixed bag of admissible and potentially inadmissible evidence.  There are a lot of statements attributed to juror number 9 that isolated in and of themselves probably would not be admissible, clearly reflecting on the mental processes of that particular juror in reaching a determination in the case.

> When we brought in a whole series of jurors to give us their opinions, I was clearly inviting, in essence, them to violate exactly what the law suggests I cannot do, but I thought it was – in the big picture, it was more important for us to find out what, if anything, had taken place.  And to do so, we were, in essence, required to somewhat delve into the thought processes or effects that certain statements would have.

13cv1598

To the extent that the people suggest that the motion can be denied at step one without going further, I think is unsupported by the evidence in our particular case. Therefore, step one was not a stumbling block to granting the motion, or at least hearing the motion.

Step two was certainly the most difficult for the court, and that was to make a determination whether there was any actual misconduct in the case.

Gentlemen, I concluded early on that there was not.

There's lots of speculation as to what might or might not have been said, when certain things were said, when they weren't said, for purposes of deliberation; whether or not a chance observation by someone of Juror 9, who, for the record, was African-American, having some type of interaction with what this particular witness perceived to be [the victim]'s family members. But there's nothing to suggest that in and of itself constitutes misconduct upon which we'd set aside the verdict in this particular case.

We never really got past step two.

There appears not to have been misconduct. Certainly the way that Juror number 9 conducted himself for purposes of deliberation is not the way we'd like to see it handled. I think it would have been more appropriate had he been more courteous to those involved in deliberations. But all the jurors that, in essence, came back and testified never said that he was inattentive, never said that he was not paying attention, and never said that he somehow disregarded the law. He reached his conclusion very early on in the case. He was confrontational at times with other juror members, but that's nothing more than we see in murder juries all the time. That's why we have 12 different people in there to come up with a decision in the case.

And none of the jurors, notwithstanding the spin, frankly, that either side put on what was said by these panel members who did come back in, it's unfortunate that whoever is going to review that is not going to have had the opportunity that we've had to actually see the people talk and hear the answers to the questions that were posed. Frankly, for what it's worth, there was nothing in any statement made by any of those witnesses in response to any question I posed to them to suggest to me that Juror 9's activity was anything more than an unpleasant, in addition to an already unpleasant, experience having to sit on a murder case. It simply did not affect their decision-making in any way whatsoever. They didn't like it, but they didn't let it affect them.

The motion is denied. You never get past step two.

(RT 2022-25.)

On October 30, 2009, the trial court, for the same reasons, denied a second new trial motion based on the trial court's refusal to allow defense counsel to object or cross-examine the jurors during the hearing, and alleging that the trial judge had improperly inquired into the deliberative process of the jurors and had improperly used that testimony to determine that the jurors were not influenced by any potential misconduct. (RT 2032-38.)

1   The appellate court denied Petitioner's jury bias and misconduct claim, finding that Juror

2   No. 9's statement was his only reference to race, and "came after lengthy deliberations and could

3   well be understood to reflect his bewilderment that, in what appeared to him to be a clear case

4   . . . the lone hold-out was still reluctant to convict the defendants." (Lodgment No. 12 at 21-22.)

5   The court concluded: "On this record, the trial court did not abuse its discretion in denying the

6   new trial motions because the record did not show as a demonstrable reality that Juror No. 9 was

7   actually biased or that he refused to deliberate or follow the court's instructions." (Id. at 22.)

8   The state supreme court summarily denied a petition for review. (Lodgment No. 13.)

9   The Magistrate Judge found that the state court's adjudication of Claim 1 was neither

10  contrary to, nor involved an unreasonable application of, clearly established federal law, and was

11  not based on an unreasonable determination of the facts, because the appellate court's findings

12  (that the trial court had made an adequate inquiry into the allegations of juror misconduct and

13  bias, and had correctly determined that Juror No. 9 was not actually biased), were objectively

14  reasonable. (R&R at 20-26.) Petitioner objects to the findings in the R&R that the state court

15  reasonably found that Juror No. 9 was not biased, arguing that it strains credulity to find that

16  Juror No. 9 was not racially biased, that not all of the determinations regarding guilt had been

17  made at the time of Juror No. 9's tirade, and that the appellate court "seems to be saying racial

18  bias is alright as long as you can perform your duties as a juror." (ECF No. 33.)

19  The Ninth Circuit has indicated that federal habeas courts are required to apply Federal

20  Rule of Evidence 606(b) when evaluating juror bias claims. Anderson v. Terhune, 409 F.App'x

21  175, 179 (9th Cir. 2011) ("Federal Rule of Evidence 606(b) governs the admissibility of juror

22  testimony in federal habeas proceedings."), citing McDowell v. Calderon, 107 F.3d 1351, 1367

23  (9th Cir. 1997), vacated in part on other grounds, 197 F.3d 1253 (9th Cir. 1999); but see

24  Williams v. Price, 343 F.3d 223, 230 n. 3 (3rd Cir. 2003) (disagreeing with cases from the 2nd,

25  4th, 7th and 9th Circuits which hold that Rule 606(b) applies in federal habeas proceedings to

26  juror testimony taken in state court, and finding that state court proceedings are not governed

27  by the Federal Rules of Evidence). After the R&R was issued, the Supreme Court decided

28  Warger v. Shauers, 574 U.S. ___, 135 S.Ct. 521 (2014), in which it clarified that Rule 606(b)

precludes use, during a hearing into the validity of a verdict, of any statement made by a juror during deliberations, with exceptions only for extraneous information, outside influence, and mistakes in entering the verdict.  Id. at 527, abrogating Hard v. Burlington Northern R.R., 812 F.2d 482, 485 (9th Cir. 1987) (holding that "[s]tatements which tend to show deceit during voir dire are not barred by [Rule 606(b)].")  Thus, Petitioner cannot rely on Ninth Circuit authority for the proposition that Juror No. 9's failure to disclose bias during voir dire permits the Court to consider the testimony of the other jurors.[1]

It also appears, in light of Warger, that dicta from the Ninth Circuit that evidence of racial bias is exempt from Rule 606(b) is no longer persuasive, except perhaps in extreme cases.  See United States v. Henley, 238 F.3d 1111, 1121 (9th Cir. 2001) ("While we find persuasive those cases that have exempted evidence of racial prejudice from Rule 606(b)'s juror incompetency doctrine, we need not decide today whether or to what extent the rule prohibits juror testimony concerning racist statements made during deliberations or, as in this case, outside of deliberations but during the course of the trial.  Where, as here, a juror has been asked direct questions about racial bias during voir dire, and has sworn that racial bias would play no part in his deliberations, evidence of that juror's alleged racial bias is indisputably admissible for the purpose of determining whether the juror's responses were truthful."), citing Hard, 812 F.2d at 485; see also Warger, 135 S.Ct. at 529 n.3 ("There may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged.  If and when such a case arises, the Court can consider whether the ususal safeguards are or are not sufficient to protect the integrity of the process.")

To the extent Petitioner contends the adjudication of Claim 1 by the state appellate court was contrary to clearly established federal law because it relied on the testimony of the jurors, Petitioner has not shown that clearly established federal law requires state courts to follow Rule 606(b).  See e.g. Price, 343 F.3d at 237-39 (rejecting contention that clearly established federal

---

[1]  A voir dire questionnaire asked: "Everyone has biases, prejudices or preconceived notions. Do you have any that would affect the way you decide this case?  Explain."  (RT 281.)  The record does not appear to include Juror No. 9's response, although the new trial motion states that Juror No. 9 "did not disclose his racial bias" during voir dire.  (CT 1316, 1322.12, 1322.18.)

law makes Rule 606(b) applicable to the States), citing <u>Burgett v. Texas</u>, 389 U.S. 109, 113-114 (1967) ("The States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution.")[2]

The Court agrees with the Magistrate Judge's finding that an adequate inquiry was made into the allegations of juror bias and misconduct, and that there was an insufficient showing that any potential bias or misconduct rose to the level of a federal Constitutional violation.  A criminal defendant has a Sixth Amendment right to a "fair trial by a panel of impartial, 'indifferent' jurors." <u>Irwin v. Dowd</u>, 366 U.S. 717, 722 (1961).  "If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel." <u>United States v. Hendrix</u>, 549 F.2d 1225, 1227 (9th Cir. 1977).  The Ninth Circuit has stated that:

> A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances.  An informal in camera hearing may be adequate for this purpose; due process requires only that all parties be represented, and that the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality.  So long as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness.

<u>Dyer v. Calderon</u>, 151 F.3d 970, 974-75 (9th Cir. 1998) (en banc) (internal citations omitted).

The Court **ADOPTS** the Magistrate Judge's finding that the trial judge conducted an adequate inquiry into allegations of misconduct and bias by Juror No. 9 when he held a hearing at which six of the twelve jurors voluntarily appeared and were questioned by the trial judge from a list of questions submitted by the parties.  Although defense counsel objected that the inquiry was inadequate because he did not have an opportunity to cross-examine the jurors, there has been no showing, here or in the state court, what additional evidence, admissible or not,

---

[2] To the extent Rule 606(b) applies in state court to the state court's adjudication of Petitioner's federal claim, the appellate court, by relying on the statements made by the jurors regarding their deliberations, would have issued a decision that was contrary to clearly established federal law. <u>See Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000) (holding that a state court's decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases.")  In such a case, this Court must conduct a de novo review of Claim 1, and may only grant relief if a federal Constitutional violation occurred. <u>Fry v. Pliler</u>, 551 U.S. 112, 119-22 (2007).  This Court need not make that determination, however, because, as set forth below, Rule 606(b) precludes consideration of the jurors' testimony under a de novo review, and Claim 1 fails for lack of evidentiary support.

could have been obtained which might have altered the finding that there was no bias or misconduct, or the finding that any bias or misconduct which might have occurred did not rise to the level of a federal Constitutional violation.  To the extent Petitioner is correct that the trial court improperly inquired into the mental process of the jurors, or improperly used that testimony to determine whether any potential misconduct affected their verdict, Petitioner has not shown that Juror No. 9's statement or conduct by itself, without consideration of the jurors' testimony regarding its lack of effect on their verdict, is sufficient to show bias.  See Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007) (holding that juror bias is defined as "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.")

Even assuming Petitioner is correct that it is reasonable to interpret the statements and actions attributed to Juror No. 9 as being the type that could lead to an inference that he was not able to act with entire impartiality, habeas relief is not available as long as the state court's opposite finding is also reasonable.  White v. Woodall, 572 U.S. ___, 134 S.Ct. 1697, 1706-07 (2014) (holding that relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."),  quoting Harrington v. Richter, 562 U.S. 86, __, 131 S.Ct. 770, 787 (2011).  As set forth above, the trial judge found that Juror No. 9's outburst was nothing more than an unpleasant reaction to an unpleasant situation typical of jury service on a murder trial, and observed that it is unfortunate that any reviewing court would not have the same opportunity as the trial judge to observe the jurors' testimony in that regard.  See Miller v. Fenton, 474 U.S. 104, 114 (1985) (holding that a state trial judge is in a far superior position to assess juror bias than federal habeas judges); see also Austad v. Risley, 761 F.2d 1348, 1350 (9th Cir. 1985) ("The Supreme Court has clearly established that the determination of a juror's partiality or bias is a factual determination to which section 2254(d)'s presumption of correctness applies."), citing Patton v. Yount, 467 U.S. 1025, 1036 (1984).

Accordingly, the Court **ADOPTS** the finding of the Magistrate Judge that the state appellate court's findings that an adequate inquiry was made into the allegations of bias and misconduct, and that there was no showing of bias or misconduct sufficient to rise to the level

of a federal Constitutional violation, is objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(1)-(2).

The Court alternately finds that, to the extent this Court is precluded by Federal Rule of Evidence 606(b) from considering the testimony of the jurors, there is no evidence whatsoever of juror bias or misconduct before this Court, and Claim 1 fails under a de novo review for lack of evidentiary support. Warger, 135 S.Ct. at 527. Although Warger recognized that extreme cases of bias might permit the Court to consider juror testimony, Petitioner has not alleged facts which, if true, and if this Court were able to consider the jurors' testimony, rise to such an extreme level.

Mindful of the "relatively low" threshold for granting a certificate of appealability, Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002), and that "the petitioner need not show that he should prevail on the merits," Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000), quoting Barefoot, 463 U.S. at 893 n.4, the Court **ISSUES** a Certificate of Appealability with respect to Claim 1. See e.g. Warger, 135 S.Ct. at 529 n.3 ("There may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged. If and when such a case arises, the Court can consider whether the ususal safeguards are or are not sufficient to protect the integrity of the process."); Price, 343 F.3d at 230 n. 3 (disagreeing with cases from the 2nd, 4th, 7th and 9th Circuits holding Rule 606(b) applies in federal habeas proceedings).

**2.   Claim 2**

With respect to Petitioner's claim that he received constitutionally ineffective assistance of counsel because his appellate counsel failed to raise on appeal a claim alleging that his trial counsel prevented Petitioner from testifying at trial, the Court **ADOPTS** in full the Magistrate Judge's findings that the claim is untimely, and that, even if Petitioner could avoid the timeliness bar, federal habeas relief is unavailable because the silent denial of the claim by the state supreme court is neither contrary to nor involves an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts. (R&R at 26-36.) Habeas relief is **DENIED** as to Claim 2 for the reasons set forth in the R&R, and the Court declines to issue a Certificate of Appealability with respect to Claim 2.

**3.      Conclusion and Order**

The Court **ADOPTS** the findings and conclusions of the Magistrate Judge as set forth above.  The Petition for a Writ of Habeas Corpus is **DENIED** for the reasons set forth above. The Court **ISSUES** a Certificate of Appealability limited to Claim 1.

The Clerk of Court shall enter judgment denying the Petition and issuing a Certificate of Appealability limited to Claim 1 of the Petition.

**IT IS SO ORDERED.**

DATED:  May 13, 2015

BARRY TED MOSKOWITZ, Chief Judge
United States District Court

13cv1598